# IN THE COURT OF APPEALS OF IOWA

No. 24-1092
Filed October 16, 2024

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**D.S., Mother,**
        **Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.

A mother appeals the order terminating her parental rights.  **AFFIRMED.**

Shannon L. Wallace of Youth Law Center, Des Moines, for appellant mother.

Heidi Miller of The Law Office of Heidi Miller, Pleasantville, guardian ad litem for mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Teresa Pope of Pope Law, PLLC, Des Moines, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

When a teenage mother entered juvenile detention, she left her young child—born in 2021—in the care of her own mother (the child's maternal grandmother). When the maternal grandmother tested positive for methamphetamine, the child was removed from both the grandmother's care and the mother's legal custody. A little over sixteen months later, the juvenile court terminated the mother's parental rights to the child.[1]

The mother appeals. She challenges the statutory grounds for termination, argues the juvenile court should have applied a permissive exception to preclude termination, contends the court should have established a guardianship in lieu of termination, and requests additional time to work toward reunification.[2]

We conduct a de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). The juvenile court's fact findings do not bind us, but we give them weight, especially in assessing witness credibility. *Id.* Our review follows a three-step process to determine if a statutory ground for termination has been satisfied, whether termination is in the child's best interests,

---

[1] The child's father is unknown. The juvenile court also terminated the parental rights of any unknown fathers, with the exception of one potential father identified by name for whom the court ordered paternity testing between the time of the termination hearing and the filing of the court's termination-of-parental-rights order. No father appeals.

[2] To the extent the mother argues that the State failed to make reasonable efforts toward reunification by not providing her with housing or failing to comply with Iowa Code section 232.78(8)(a) (2022), our review of the record shows that the mother did not raise these claims to the juvenile court prior to the termination hearing. As a result, these claims are waived, and we cannot consider them. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (recognizing a parent must raise a perceived deficiency in services "at the removal, when the case permanency plan is entered, or at later review hearings" and failure to do so amounts to waiver).

and whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). After addressing any challenged steps, we then consider any additional claims raised by a parent. *In re J.K.-O.*, No. 24-0678, 2024 WL 3290381, at *1 (Iowa Ct. App. July 3, 2024).

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h) (2024). That section permits termination upon clear and convincing proof that the child (1) "is three years of age or younger"; (2) "has been adjudicated a child in need of assistance"; (3) has been removed from the physical custody of the parents for at least six of the last twelve months; and (4) cannot be returned to the custody of the parent. Iowa Code § 232.116(1)(h). The mother challenges the third and fourth elements.

As to the third element, requiring removal for at least six of the last twelve months, *see id.* § 232.116(1)(h)(3), the mother argues the child was removed from the grandmother's physical custody rather than her physical custody. She is mistaken, and her reliance on *In re C.F.-H.*, 889 N.W.2d 201 (Iowa 2016), is misplaced. In *C.F.-H.*, the child had never been in the father's physical custody and the juvenile court had never issued an order removing the child from the father's or the mother's custody. 889 N.W.2d at 202, 205. There, the supreme court concluded no removal had occurred because there was no "dynamic change of circumstance" with respect to physical custody of the child. *Id.* at 206, 208. Here, a "dynamic change of circumstance" occurred when the juvenile court formally ordered removal of the child from the mother's custody.[3] We conclude the

---

[3] The mother consented to removal of the child from her custody.

child was removed from the mother's physical custody for the requisite period, satisfying the third element. *See* Iowa Code § 232.116(1)(h)(3)

Next, we address the mother's challenge to the fourth element—whether the child could be safely returned to her custody at the time of the termination hearing. *See id.* § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing). At the time of the termination hearing, the mother remained in a juvenile detention facility where she could not have custody of the child. So, the State established that the child could not return to her custody at the time of the termination hearing, satisfying a statutory ground for termination.

We move next to the second step of our three-part test—whether termination of parental rights is in the child's best interests. The mother indirectly challenges the juvenile court's best-interests determination. When making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). These factors support the juvenile court's determination that termination is in the child's best interests. The mother lacks stability. She is fifteen years old, has behavioral problems, lives in a juvenile-detention facility due to repeated delinquent conduct, and has repeatedly absconded from various facilities at which she was receiving needed services. Conversely, the child is "very comfortable" and "bonded" to his

current foster care placement. Ultimately, we agree that the child's interests will be best served through termination, freeing the child for adoption.

We turn next to the third step—permissive exceptions. Application of a statutory exception to termination is permissive, not mandatory, and it is the parent's burden to prove that the exception should be applied. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The mother points to two potential exceptions: section 232.116(3)(c) and (e).

Section 232.116(3)(c) gives the court discretion to forgo termination when the bond between parent and child is so strong that "termination would be detrimental to the child." The mother did not meet her burden of establishing a bond of such magnitude by clear and convincing evidence. *See* Iowa Code § 232.116(3)(c) (requiring proof of the exception by "clear and convincing evidence"); *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). The child has spent most of his young life in the care of others, with the mother absent while living in various facilities. While the record establishes that the child recognizes his mother, it does not reflect a bond of such magnitude that its severance would be manifestly detrimental to the child. Like the juvenile court, we decline to apply section 232.116(3)(c) to avoid termination of the mother's rights.

Section 232.116(3)(e) gives the court discretion to forgo termination when the "absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces." The mother was in a juvenile-detention facility at the time of the termination hearing. "Institution," as used in section 232.116(3)(e), does not include "penal institutions or correctional facilities." *See In re L.M.*, No. 20-0185,

2020 WL 2065952, at *4 (Iowa Ct. App. Apr. 29. 2020). So, this permissive exception does not apply here.[4]

We next address the mother's additional claims. The mother argues the juvenile court should have established a guardianship in lieu of termination. "[A] guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). And a guardianship is a particularly poor option when the child is too young to express an informed preference. *A.S.*, 906 N.W.2d at 478. This child's young age—less than three years old at the time of the termination hearing—weighs against a guardianship. *See id.* Guardianships inherently provide less stability for a child than termination and adoption, particularly for a child this young. Additionally, while the mother "nominate[d] her cousin . . . to serve as guardian" in her written closing argument, nothing in the record establishes that this cousin would be willing, able, and qualified to serve. *Cf. In re M.H.*, No. 24-0576, 2024 WL 3050791, at *3 (Iowa Ct. App. June 19, 2024) ("Without a named option and evidence supporting the choice of a particular person, we cannot review the factors that are usually considered when determining whether a guardianship is appropriate in this case."). As such, we conclude a guardianship would be contrary to the child's best interests.

Finally, we address the mother's request for additional time to work toward reunification. The court may grant a parent six additional months to work toward reunification in lieu of termination under certain circumstances. *See* Iowa Code

---

[4] The mother makes reference to different medical treatment programs to which she was admitted during various points during this case. However, she was not in any health facility at the time of the termination hearing.

§ 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving an additional six months to work toward reunification). But before the court may grant a parent such additional time, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

Following our de novo review of the record, we cannot conclude the mother will be able to assume custody of the child in six months' time. The mother has been unable to make any sustained progress over the life of this case. She has fled from treatment programs, resulting in the issuance of warrants to place her in detention and resulting in her failing to attend visits with the child. When not in custody or a controlled environment, the mother has repeatedly engaged in delinquent activity. The mother also has significant mental-health diagnoses, yet she refuses medication management for those conditions. While we sincerely hope the mother's life follows an upward trajectory, given her past inability to make progress, we are not confident that she will be at a point to assume custody of the child within just six months. So, like the juvenile court, we do not grant the mother any additional time to work toward reunification.

**AFFIRMED.**